LEVY v. NASH.

Opinion delivered June 29, 1908.

WATERS—LIABILITY FOR CLOSING DRAINS IN CITY.—The owner of city property may take such measures as he deems expedient to keep surface water off his land, even to the extent of closing an underground drain, without incurring liability to an adjacent proprietor.

Appeal from Pulaski Chancery Court; *Jesse C. Hart,* Chancellor; reversed.

*John H. Cherry,* for appellant.

The common law rule is that "surface water is a common enemy, which any land owner may get rid of as best he can." Gould on Waters, § 265; 13 Gray, 601; 10 Allen, 106; 100 Mass. 182; 44 Neb. 526; 48 Neb. 87. Mere surface water, which is supplied by rains or melting snow, flowing in a hollow or ravine on the land, is not a watercourse. 52 Wis. 526; 61 *Id.* 642; 9 Cush. 171; 30 Conn. 180; 22 Kan. 352; 53 Me. 200. The rule which would be applied to surface water in agricultural districts must be somewhat modified when applied to city lots. 65 N. Y. 346. There must be a distinct channel with well-defined banks cut through the turf, or something which will present at a glance the evidence of the action of running water, to constitute a stream or watercourse. 25 Kans. 214; 142 Mass. 110.

*Marshall & Coffman,* for appellee.

To be a watercourse, it is not necessary that the flow be strong enough to cut through the sod, it being enough that there is a natural depression forming a channel for the stream. It is not necessary that there should be a running stream with well-defined banks. 39 Ark. 463; 66 *Id.* 271; 82 *Id.* 447. Appellant did not "so use his own as not to injure another." 21 L. R. A. 593; 26 *Id.* 653; 15 *Id.* 630; 53 N. E. 325. It is not necessary that appellee resort to the principles of prescription or license to insure himself against the closing of the artificial drain below him. 47 Ark. 66; 78 Me. 300; 58 N. H. 354; 8 L. R A. 277.

BATTLE, J. This suit was brought in the Pulaski Chancery Court by Walter Nash against M. Levy. He alleged in his complaint as follows: "That he is the owner of lot 6 in block 18 in

Pope's Addition to Little Rock, Arkansas, which is on the southwest corner of Fourth and Sherman streets; that he has built a house thereon fronting on Sherman Street, and one on the alley, fronting Fourth Street; that about one year ago Fourth Street was graded between Sherman and Commerce streets; and at the end of said alley a large tile drain was placed under and across said Fourth Street to carry off the water, said work of tiling and grading being done under the authority and direction of the city of Little Rock; that running down said alley, and for quite a distance from the south, is a natural drain or watercourse or swale, which carries off large quantities of water, being the outlet for the water falling on several acres of ground; and that prior to the grading of said Fourth Street said drain ran across the same in a northeasterly direction, where the drain pipe is now situated.

"That defendant owns the property on the northwest corner of said Fourth and Sherman streets, lying on the opposite side of Fourth Street from plaintiff's property; and there is and has been for a long time a covered culvert running northeastwardly and under defendant's said property, and the sidewalk adjoining, which for a long time carried off the water of said drain, whence it was carried across the adjoining property, and so on until it reached the town branch.

"That for about two months after the grading and tiling of Fourth Street as aforesaid the water was carried off by said tiling and culvert when defendant closed the end of said culvert at the curb line where it joined the said tiling by placing plank across the same, thereby completely obstructing the flow of the water of said drain. That with heavy rains large quantities of water accumulate at and about the end of said alley on the south side of Fourth Street, submerging his sidewalk and back yard and retaining wall and frequently standing for several days before it evaporates or soaks up in the soil, creating a nuisance and obstructing the travel on said sidewalk on that side, and often rising high enough to run across Fourth Street and the north sidewalk thereof, thereby injuring and obstructing the same.

"That defendant refuses and fails to open said culvert, though often requested to do so. Wherefore plaintiff prays for a

mandatory injunction requiring defendant to remove said obstruction and open said drain for the free access and flow of the water through the same, and that he be permanently enjoined from again closing up or obstructing or in any way interfering with said drain or the water through the same, and for costs and all proper and general relief."

The defendant answered and· among other things said:

"4. Defendant denies that there is any stream or channel or watercourse running across said block 18, or across the block on which defendant resides; but says that the only water flowing northwardly across or from said block 18 is surface water from rain fall or melting snows, and there is a slight depression through or near the center of said block 18 through and over which the greater portion of said surface water falling on said block 18 passes northwardly toward the town branch; that it flows through no channel, but spreads over the lower land in a northerly .direction until it reaches the town branch.

"5. It is true that there has been a small culvert or underground drain across the rear of defendant's lot, as well as the ground north of his, extending northwardly to. Third Street, which culvert was inadequate to carry off the surface water coming across the street from the block above, and which underground drain was made for the sole purpose of sub-drainage and to prevent the rear yards from being wet or marshy; but defendant says he is not obliged by law or otherwise to keep the same open to drain off the surface water that falls or flows upon plaintiff's land, and that he has closed ·and kept the same closed against said surface water, as he has a lawful right to do.

"6. Defendant further says that the natural flow of said surface water would not be over or across the defendant's said land, but would be across the lands in rear of his, which are lower than his. That he·has done and is doing nothing in respect thereof except protecting his said land from being overflowed by the surface water falling upon the land of the plaintiff and other owners of lands in block 18, and this he has a lawful right to do."

After hearing the evidence, the court ordered the defendant to remove at his own expense any and all obstructions to the free passage of water through the underground culvert on his land and perpetually enjoined him from closing the same.

The evidence shows that the defendant was forced to close the underground culvert to protect his own lot against overflows by surface water on account of the obstruction of water flowing through the same by the owners of lots below him.

The lot of the defendant is in the midst of a populous city. The rule which governs the right to dispose of surface water in agricultural districts does not apply to such property. It is set apart, held and owned for building purposes. To make it useful for this purpose, the owner has the right to fill it up. elevate it, to ditch it, to construct buildings on it in such a manner as to protect it against the surface water of an adjoining lot. If in so doing he prevents the flow of surface water upon his lot, the owner of the higher lot has no cause of action against him. This is a necessary incident to the ownership of such property. A contrary rule would operate against the advancement and progress of cities and towns and to their injury, and would be against public policy.

Judge Dillon, in his work on Municipal Corporations, says: "On the one hand, the owner of the property may take such measures as he deems expedient to keep surface water off from him, or turn it away from his premises on to the street; and, on the other hand. the municipal authorities may exercise their lawful powers in respect to the graduation, improvement, and repair of streets, without being impliedly liable for the consequential damages caused by surface water to adjacent property." 2 Dillon's Municipal Corporations, (4th Ed.) § 1040.

In *Barkley* v. *Wilcox,* 86 N. Y. 140, the syllabus is as follows: "The parties owned adjacent lots on a street near a village; the natural formation of the land was such that surface water from rain or melting snows would descend and accumulate in the street in front of plaintiff's lot, and, in times of unusual accumulations, would run off over a natural depression across defendant's lot and other low lands to a river. Defendant built a house on his lot, filled in the lot and graded up the sidewalk in front of it, so as to cut off the flow of the surface water, and thereafter, there being an unusually large accumulation in the street, it flowed upon plaintiff's premises and into his cellar. In an action to recover damages for the injuries *held,* that defendant was not liable." *Vanderwiele* v. *Taylor,* 65 N. Y. 341.

In this case the defendant closed up an underground drain which he made on his own lot when he discovered it was injurious. He was in the legitimate exercise of his rights for his protection, and is not liable for damages.

Decree reversed and cause remanded with directions to the court to dismiss complaint for want of equity.

HART, J., being disqualified, did not participate.