BRASKO v. PRISLOVSKY.

4-7423                                                  183 S. W. 2d 925

Opinion delivered December 11, 1944.

J. B. *Reed* and *Chas. A. Walls,* for appellant.

*M. F. Elms,* for appellee.

SMITH, J.   Appellant, George Brasko, and appellee, Mike Prislovsky, own farms on opposite sides of Highway 11, about 4 miles north of Stuttgart. This highway runs north and south, and the Brasko farm is on the west side of the highway, while appellee's farm is on the east side. There are ditches on both sides of the highway, parallel with it, which were designed when the highway was built to carry away the rainfall or surface water. The surrounding lands are part of a prairie, and are virtually level. There is no discernible water fall in any direction nor any water course of any kind.

Prior to 1943, one D. F. Fowler owned the farm now belonging to appellee, and which he sold to appellee in that year. In 1929 or 1930, Fowler dug a ditch, at his own expense and for his own use, running east across his land from Highway 11. After purchasing the land from Fowler, appellee, in 1943, dug a ditch for irrigation purposes along his west line, which was parallel to the highway. This last ditch crossed the first ditch at a right angle and operated to dam the extreme west end of the first ditch, and this suit was brought to compel the removal of the dam and to recover damages for its construction and from a decree denying that relief is this appeal.

Had the relief prayed been granted, the surface water on Brasko's land, which flowed through a culvert placed in the highway at the time of its construction, would have flowed into the ditch running east through appellee's land, but to reach that ditch the surface water would have flowed over the highway ditch, which had been designed to afford drainage, but did not accomplish that result, because this ditch paralleling the highway had not been kept open, but had been allowed to fill up. In other words, the court was asked to require appellee to remove the dam which he had constructed by building his irrigation ditch at the head of the ditch running east through appellee's farm.

The testimony is to the effect that while the ditches running parallel to the highway, which were constructed when the highway was built, carried away the surface water so long as those ditches were left open, they did not now accomplish that purpose inasmuch as the highway ditches were not kept clear and open.

With the head of the ditch running through appellee's farm dammed up, surface water cannot escape through the culvert running under the highway, and impounds and backs up over portions of Brasko's farm to his injury and damage, and the purpose of this suit is to compel appellee to permit this surface water to escape by running through appellee's ditch, running east across his field. If this relief were granted, appellee would be under the continued necessity of keeping the ditch open to prevent the flow of surface water over his land, and it might not accomplish that purpose at all times.

We are cited to a number of cases dealing with the consequences of obstructing water courses and the power and duty of courts to afford protection from that action. But these cases are not applicable here, for the reason that there has been no obstruction of a water course.

In the case of *Leader* v. *Mathews*, 192 Ark. 1049, 95 S. W. 2d 1138, we approved the definition of a water course appearing in the case of *Boone* v. *Wilson*, 125 Ark. 364, 188 S. W. 1160, where it was said:

"A watercourse is defined to be a running stream of water; a natural stream, including rivers, creeks, runs and rivulets. There must be a stream, usually flowing in a particular direction, though it need not flow continuously. It may sometimes be dry. It must flow in a definite channel, having a bed and banks, and usually discharges itself into some other stream or body of water. It must be something more than mere surface drainage over the entire face of the tract of land occasioned by unusual freshets or extraordinary causes."

The leading case relating to the right a landowner has to fend against surface water is that of *Little Rock & Fort Smith Ry. Co.* v. *Chapman,* 39 Ark. 463, 43 Am. Rep. 280, which case has been cited and approved in many later cases. It was there said:

"And, with regard to surface-water, the common law courts generally agree that each proprietor has the right to fend off the surface-water flowing naturally or falling upon his own soil, so as to divert its course, and may even throw it back upon his neighbor from whose land it came. The point, however, upon which there is amongst them great conflict, and no little obscurity, is as to whether this right is absolute at the will of the lower proprietor, or whether its exercise must be reasonable for proper objects, and with due care to inflict no injury beyond what may be fairly necessary. The question rather concerns the good faith of the act, and the manner of doing it, than the right itself. If necessary, the right is generally unquestioned, and if done with due care of the property of another, although the latter may be injured, he has by the common law no remedy."

The case of *Leader* v. *Mathews, supra,* after reviewing a number of our earlier cases announced the law to be that a landowner may fend against the flow of surface water, unless in so doing he unnecessarily or willfully damages another. See, also, *Honey* v. *The Bertig Co.,* 202 Ark. 370, 150 S. W. 2d 214.

There is no evidence that appellee has acted willfully or maliciously. He would hardly have gone to the

expense and trouble of digging a ditch entirely across his field for the mere purpose of damming the head of the four-foot ditch which runs east through his field. On the contrary, his purpose was to fend against the flow of surface water over his land, a right which he had.

Another plaintiff in the suit below named Brasko, joined in the suit, and prayed the same relief, but it does not appear that he has appealed, but, if so, his appeal may be disposed of by saying that he showed no greater right to the relief prayed than did the other Brasko.

The decree is correct and is, therefore, affirmed.