Timmons *v.* Brannan.

4-9619                                     244 S. W. 2d 136

Opinion delivered December 3, 1951.

Rehearing denied January 7, 1952.

*John G. Moore,* for appellant.

*Phillip H. Loh,* for appellee.

PAUL WARD, J. The parties hereto, being adjacent landowners in and/or near the town of Lewisburg, found themselves involved in a dispute over the common boundary line soon after appellant, plaintiff below, bought his land in 1947. It is not surprising that there was some uncertainty as to the true boundary when the two descriptions are examined. Although appellants land is small in area it is set forth in four separate calls by long and involved metes and bounds descriptions. Parts of the descriptions refer to blocks, parts to section 20, township 6 north, range 16 west, and parts to other peoples lands which are not described. The same thing is true of the description of the lands belonging to appellee. An old fence stood on or near the boundary line, but, as will appear later, it was not considered by the parties themselves as the true or accepted line.

From the evidence it appears that about two years before appellant bought his property, lying to the east, appellee tore down the old fence and replaced it with a new one, and the first intimation of a dispute arose in 1948 when appellant tore down the new fence and erected another one a short distance to the west. After appellee called appellant's attention to the fact that the last fence was on his [appellee's] land, appellant moved the fence back. Later appellant built another fence on land claimed by appellee. In an effort to settle the matter peaceably the parties entered into a contract on May 8, 1950, establishing a definite boundary line, but twelve days later appellant rescinded this agreement on the ground of lack of consideration. Thereupon the parties again entered into a written contract dated May 20, 1950, definitely fixing a mutual boundary line, which contract reads as follows:

"For and in consideration and premises set out, it is hereby agreed by and between E. H. Timmons, San

Francisco, California, hereinafter called party of the first part, and George Brannan, Morrilton, Arkansas, hereinafter called party of the second part, WITNESSED:

"That the party of the first part and the party of the second part have been in disagreement as to the true boundary line that exists between their adjacent property and for the purpose of determining once and for all the true boundary line, they are entering into this agreement:

"It is hereby mutually agreed that the iron stake as now located at the southwest corner of the property of the party of the first part is hereby established as the true boundary line between the southwest corner of the property of the party of the first part and the southeast corner of the property of the party of the second part.

"It is hereby agreed that the party of the first part shall remove, at his own expense, the fence now located on said line between the parties hereto and said party of the first part agrees to immediately reconstruct and set back, at his own expense, the fence and place the same on the true boundary line herein agreed to by said parties.

"It is hereby agreed that said line shall run directly or due north of the iron stake hereinabove mentioned to the northwest corner of the property of the party of the first part to the now placed post in said northwest corner of the property of the party of the first part.

"The party of the first part agrees and by these presents does pay to the party of the second part the sum of Sixty-seven Dollars ($67.00), and the party of the second part agrees and by these presents does accept the amount of Sixty-seven Dollars ($67.00), in settlement of the dispute as to the boundary line between adjacent properties.

"It is hereby agreed by and between the parties that the above described fence shall be and is a partnership fence and the maintenance and repair of the same is to be shared jointly.

"It is hereby agreed that this contract revokes any or all agreements existing heretofore.

"This contract signed this day in duplicate.

"WITNESS our hands this 20th day of May, 1950.

s/ E. H. Timmons
E. H. Timmons
s/ George Brannan
George Brannan

"Filed this 11 day of August, 1950.

R. W. Morgan, Jr."

On June 30, 1950, appellant filed suit in chancery court alleging ownership of the property mentioned above, that appellee was interfering with his possession by erecting markers, posts, and other obstructions upon his land, and praying that appellee be enjoined from so doing. Appellee, after denying the above allegations, claimed ownership of his own lands, described in detail, and pleaded the contract set out above. Appellant replied that he was induced to sign said contract through fraud and misrepresentation. After an adverse holding by the chancellor appellant was allowed to introduce further testimony on a new allegation of mutual mistake. Once more the holding was against appellant and he prosecutes this appeal.

The testimony is voluminous and difficult to correlate and it would serve no useful purpose to attempt to set it out in detail. It is sufficient to refer to a few portions and to state that we find nothing to justify disturbing the finding of the chancellor against fraud or mutual mistake. In a letter written by appellant [to appellee] some days after the contract in question was signed he stated that he was rescinding because of lack of consideration but nothing was said about the reasons relied on here. Appellant contends that appellee agreed to quitclaim to him another parcel of land and failed to do so, and it is true that the chancellor ordered appellee to make said conveyance or repay the $67.00, and that appellee paid the money. This is of no avail to appellant

here for two reasons. In the first place there is no clear testimony sustaining such contention and in the second place, even if there were, there is nothing to show it was made a conditional part of the boundary line agreement entered into on May 20, 1950. Since the execution of the contract is admitted by appellant and we find no evidence of fraud or mutual mistake sufficient to warrant a rescission, the contract is effective to establish the boundary line.

No error appearing the decree of the lower court is affirmed.