T. S. SMITH *v.* CLAUDE W. CRUTHIS ET AL

5-6221                                    499 S.W. 2d 852

Opinion delivered October 8, 1973

*Eubanks, Files & Hurley,* for appellant.

*Butler & Hicky,* for appellees.

LYLE BROWN, Justice. This suit primarily concerns a boundary dispute. Appellees, Claude W. Cruthis and John H. Cruthis, are the owners of Section 34, Township 5 North, Range 1 West, in Woodruff County. Appellee John E. Cruthis was the tenant on the lands for 1970. Appellant T. E. Smith owns Section 3, Township 4 North, Range 1 West, in St. Francis County. Appellant's land lies immediately south of the Cruthis land; in other words the parties have a common boundary line which is also the line between the two counties. Claude and John Cruthis alleged that appellant came upon their side of the property line in 1970 and erected a levee which obstructed the natural drainage from the Cruthises lands. The Cruthises asked for a permanent injunction to prohibit the maintenance of the levee which was obstructing the natural flow of the surface water from their lands. Their tenant, John E. Cruthis, sought 1970 crop damages caused by the waters; the amount of damages was alleged to be $700. Appellant, Smith, denied the allegations of the complaint except as to ownership of the two sections. Affirmatively, appellant alleged that appellees, several years ago, dug a ditch from the northwest to the southeast across their lands in order to drain their lands and speed the flow of surface water and created a temporary lake for duck hunting; that the parties entered into an agree-

ment whereby appellees agreed to divert the water that was impounded by appellees' levee into a ditch which appellees dug on appellant's land with his permission; that the ditch emptied into a natural drain; and that appellees' damages resulted from their failure to keep the ditch unobstructed. Appellant also alleged that appellees promised to remove two pipes they had placed in the drain when they constructed the levee and that they would close the gaps in the levee when the pipes were removed.

Appellant Smith cross-complained against the appellees, the landowners. He asserted that appellees had twice trespassed on his lands in 1971 and cut his dikes and levee which he contended were on the boundary line; and that those acts cast impounded drainage water upon appellant's land and destroyed his rice crop consisting of thirty acres. For those alleged activities appellant prayed for actual and punitive damages.

The trial court first fixed the boundary line. If that line is correct then appellant Smith constructed what is designated as a new rice ditch (flume) east and west and substantially upon the acreage of the Cruthises. That ditch is not true east and west and protrudes at variable distances into Section 34 in Woodruff County. The protrusions vary from a very small distance up to, roughly, some 500 feet. The court directed that appellant remove the flume and levee which it found to be north of the established line; however, the court held that the parties were dealing with surface water and that landowners, appellant in particular, had the right to fend off surface waters by maintaining a flume and levee upon his own lands. The court denied damages to either party on the finding that the estimates of damages were too speculative.

Appellant designates four points for reversal:

## I and II

The court was in error in its determination of the boundary line. The court was in error in ruling that

the extension eastwardly of an east-west roadway represented the recognized boundary between the properties.

### III

The court erred in exercising jurisdiction over appellant's counterclaim.

### IV

If the court did not err in exercising jurisdiction over appellant's counterclaim then it was error to deny damages sought by that claim.

The cross-appeal of the Cruthises asserts two points:

### I

The court erred in refusing to permanently restrain appellant from erecting levees and obstructions on appellant's land which would interfere with the natural drainage of waters flowing from appellees' land through the slough or slash across appellant's lands into Flat Fork Creek.

### II

The court erred in refusing to give judgment against appellant Smith for damages to crops on appellees' land for the crop year 1970.

We first approach the main issue of boundary dispute. We cannot say that the finding of the chancellor was against the preponderance of the evidence. Three surveyors testified: Sam Word, Billy M. Cline and Jack Mitchell. The court found that Word's survey, as shown in appellees' exhibit eight, represented the true line, and we approve that finding. Cline's survey was very much in agreement with the Word survey. The court found that the Mitchell survey, made on behalf of appellant, was in error. The court commented that the Mitchell survey of 1970 coincided with the determinations made by Word and Cline. However, Mitchell did additional surveying in 1971

and at that time he placed the boundary line quite a number of feet north of his 1970 survey. The court commented in its decree that the Cline and Word surveys represented an extension of an east-west road between the litigants; therefore, says appellant, the court was inconsistent. We do not agree. The court unequivocally held the Word survey, as shown by exhibit eight, "to be the correct boundary line between the Cruthises and Smith". Incidentally, that exhibit does show the Word line to be an extension of a farm road, which road the court said the parties had long recognized as the true line. What we have said disposes of appellant's points I and II.

Appellant's Point III is that the court erred in exercising jurisdiction over appellant's counterclaim. That point is based on the theory that the suit was filed in Woodruff County and that the crop damages arose in St. Francis County. Our counterclaim statute is mandatory. Ark. Stat. Ann. § 27-1121 (Repl. 1962). That statute says that in addition to a denial of the complaint the defendant "must set out in his answer as many grounds of defense, counterclaim or set-off, whether legal or equitable, as he shall have". In *Troxler* v. *Spencer,* 223 Ark. 919, 270 S.W. 2d 936 (1954), Justice Millwee had this to say about the reason behind the act:

> In recent years there has developed a wave of procedural reform which tends to brush aside traditional limitations on pleadings of counterclaims and set-offs in order that circuity and multiplicity of actions might be avoided and litigants enabled to settle all matters between them in a single action. Arkansas has been in the forefront of this movement. Prior to 1917 our Civil Code (Kirby's Digest, § 6099) defined a counterclaim as follows: "The counterclaim mentioned in this chapter must be a cause of action in favor of the defendants, or some of them, against the plaintiffs, or some of them, arising out of the contract or transactions set forth in the complaint, as the foundation of the plaintiff's claim or connected with the subject of the action." This section was amended by § 1 of Act 267 of 1917 which now appears as Ark. Stats., § 27-1123, and reads: "The counter-

claim mentioned in this chapter may be any cause of action in favor of the defendants, or some of them against the plaintiffs or some of them." It is also now provided in the fourth subdivision of Ark. Stats., § 27-1121, that a defendant *must* set out in his answer as many grounds of defense, counterclaim, or set-off as he shall have, and we have held the provision mandatory. *Shrieves* v. *Yarbrough,* 220 Ark. 256, 247 S.W. 2d 193. We have repeatedly stated that the manifest purpose of the legislature in enacting the foregoing statutes was to permit litigants to settle all matters in dispute between them in a single unit.

We reiterate that the purpose of the compulsory counterclaim statute is to require all claims arising out of the same series of events to be settled in one suit rather than spawning a number of related claims. The wisdom of the rule should not be defeated by the breaking off of jurisdiction at a county line that lies between the litigating neighbors. See *Reasor-Hill Corp.* v. *Harrison, Judge,* 220 Ark. 521, 249 S.W. 2d 994 (1952).

Appellant's final point is that if the court had jurisdiction over his counterclaim for damages then the court erred in denying any damages. We have reviewed the evidence and we are unable to say that the finding of the chancellor is against the preponderance of the evidence.

By cross-appeal, appellees say the court erred in refusing to permanently enjoin appellant Smith from erecting levees and obstructions on Smith's own land which would interfere with the natural drainage of waters flowing from appellees' lands. The court specifically held that the parties were dealing with surface water and we cannot say it was error to so hold. The court held that the landowners had a right to build flumes and levees on their own lands to fend off surface waters. We recently said that a landowner "has the right to fend off surface waters, so long as he does not unnecessarily damage his neighbor". *Solomon* v. *Congleton,* 245 Ark. 487, 432 S.W. 2d 865 (1968). To the same effect see *Turner* v. *Smith,* 217 Ark. 441, 231 S.W. 2d 110 (1950); *Brasko* v. *Prislovsky,* 207 Ark. 1034, 183 S.W. 2d 925 (1944).

Finally, appellees assert that the court erred in not awarding $700 for crop damages. They point up the testimony of John E. Cruthis in that respect and say that the testimony was uncontradicted. In the first place, John's testimony was very sketchy and conclusionary. Furthermore, John was a party to the suit and it cannot be said that he was a disinterested witness. We find no merit in the point.

Affirmed on appeal and cross-appeal.